UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARRY CARL JOHNSON, JR.,

                Plaintiff,                      No. 14-12790

v.                                      District Judge Judith E. Levy
                                      Magistrate Judge R. Steven Whalen

DEREK WILLIAMS, ET AL.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

On July 3, 2014, Plaintiff Harry Carl Johnson, Jr. filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging that police officers from the Saginaw Chippewa Tribal Police Department, the Alma, Michigan Police Department, and the Gratiot County Sheriff's Department violated his rights under the Fourth Amendment when they conducted a warrantless search of his hotel room at the Soaring Eagle Water Park and Hotel in Mt. Pleasant, Michigan.  Mr. Johnson reached a settlement with Defendants Derek Williams and Brian Hackney, and those Defendants have been dismissed [Doc. #27 and #28]. The only remaining Defendant is Sgt. Jacob Gulick of the Alma Police Department.[1]

Before the Court is Sgt. Gulick's Motion to Dismiss Based on the Pleadings Pursuant to Fed.R.Civ.P. 12(c) or, Alternative, Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 [Doc. #36], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  Because Sgt. Gulick is entitled to

_____

[1] In his complaint Plaintiff misspelled the Defendant's name as "Julick."

qualified immunity, I recommend that his motion be GRANTED, and that he be DISMISSED WITH PREJUDICE.

## I.   FACTS

Mr. Johnson alleges that on December 19, 2012, he, Mirysa McElwee, and Danyell Thomas were guests at the Soaring Eagle Water Park and Hotel. *Complaint* [Doc. #1], ¶ 11.  At about 3:25 in the afternoon, Sgt. Gulick and Saginaw Chippewa Tribal Police Officer Williams knocked on their door, claiming to have smelled marijuana. *Id*. ¶¶ 14-15.  Mr. Johnson declined to give permission for the officers to enter the room, and when asked for identification, he provided "paperwork for a medical marijuana application accompanied with a Physician Certification form...." *Id*. ¶¶ 16-17.  Officer Williams asked Mr. Johnson if he had his medical marijuana card, and Mr. Johnson said he did not. He also denied having smoked marijuana, but informed Officer Williams that Mr. Thomas, one of the other guests who was not present, had smoked medical marijuana before he left. *Id*. ¶¶ 18-19.  Mr. Johnson acknowledged that the room was registered in his name, and told Officer Williams that the marijuana was "in the nightstand between the beds accompanied with Mr. Thomas' medical marijuana card." *Id*. ¶¶ 20-21. Mr. Johnson refused Officer Williams' request to search the room. *Id*. ¶ 23.

Mr. Thomas returned to the suite, and showed Officer Williams his medical marijuana card, stating that he had previously smoked marijuana for medical purposes. *Id*. ¶ 24.  Mr. Johnson alleges that as he began to close the door, Officer Williams "placed his foot in front of the door to prevent it from closing, pushed the door open and rushed into Plaintiff's room," with Sgt. Gulick, Deputy Hackney, and a dog entering the room. *Id*. ¶¶ 25-26.  He claims that Williams, Gulick, and Hackney "ravaged" his room and searched through all of his belongings, seizing $2,905 in his suitcase as well as Mr.

Thomas' medical marijuana card and prescription medication. He states that "[a]t no time did Plaintiff, Ms. McElwee or Mr. Thomas consent to the search and seizure. *Id*. ¶ ¶ 27-28.

Sgt. Gulick has submitted his affidavit as Exhibit 1 to his motion [Doc. #36]. He states that on the day in question, he and his canine partner participated in a training session hosted by the Saginaw Chippewa Tribal Police Department ("SCTP"). *Gulick Affidavit*, ¶ 5. In the afternoon, he was at the Soaring Eagle Hotel and Water Park. After completing the training session, he "detected a strong odor of marijuana," and followed the scent to Suite 6. *Id*. ¶¶ 7-8. Officer Williams knocked on the door, and a female answered; when the door was opened, the odor of marijuana became significantly stronger. *Id*. ¶ ¶ 12-14. Sgt. Gulick states that Officer Williams went inside, which he "interpreted" as being given consent to enter. *Id*. ¶ 16. He and other officers followed. Sgt. Gulick states that he acted only in a backup capacity, and did not arrest any of the occupants. Deputy Hackney's canine located the money, and all items were seized by SCTP officers. *Id*. ¶ 19-24.

Submitted as Defendant's Exhibit 2 is an affidavit in support of complaint for warrant executed by Officer Williams, who stated that he was given consent to enter and search the room, and that Mr. Johnson admitted to smoking marijuana. Mr. Johnson was charged with a misdemeanor offense of possession of marijuana, but the charge was ultimately dismissed without prejudice. *See* Defendant's Exhibits 3 and 4.

## II.    STANDARD OF REVIEW

### A.    Fed.R.Civ.P. 12(c)

A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is evaluated under the same standards as a motion to dismiss under Fed.R.Civ.P. 12(b)(6), for failure

to state a claim on which relief can be granted. *Lindsay v. Yates*, 498 F.3d 434, 437, n.5 (6th Cir. 2007)("[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same...."). In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the

-4-

reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]'–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

### B.    Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to

defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

The non-moving party must identify specific facts in affidavits, depositions or other

factual material showing "evidence on which the jury could *reasonably* find for the

plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot

meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-

23.

## III.   DISCUSSION

Sgt. Gulick seeks dismissal on the basis of qualified immunity.

Qualified immunity is an affirmative defense. A state official is protected by

qualified immunity unless the Plaintiff shows (1) that the Defendant violated a

constitutional right, and (2) the right was clearly established to the extent that a

reasonable person in the Defendant's position would know that the conduct complained

of was unlawful. *Saucier v. Katz*, 533 U.S. 194 (2001). Under *Saucier*, the inquiry was

sequential, requiring the district court to first consider whether there was a constitutional

violation. However, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court

held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory.

Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised

on a case-by-case basis:

> "On reconsidering the procedure required in *Saucier,* we conclude that,
> while the sequence set forth there is often appropriate, it should no longer
> be regarded as mandatory. The judges of the district courts and the courts of
> appeals should be permitted to exercise their sound discretion in deciding
> which of the two prongs of the qualified immunity analysis should be
> addressed first in light of the circumstances in the particular case at hand."

*Pearson*, 129 S.Ct. at 818.

Qualified immunity " 'provides ample support to all but the plainly incompetent or

those who knowingly violate the law.' " *Burns v. Reed*, 500 U.S. 478, 494-95 (1991)

-6-

(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Once the defense of qualified immunity is raised, the plaintiff bears the burden of proving that the defendant is not entitled to qualified immunity.  *Rodriguez v. Passinault,* 637 F.3d 675, 689 (6th Cir. 2011).

In this case, I will first discuss whether there was a constitutional violation. The following facts, viewed in the light most favorable to Mr. Johnson, are pertinent:

1.  Sgt. Gulick detected a strong odor of marijuana emanating from Mr. Johnson's room.

2.  Although Mr. Johnson denied smoking marijuana himself, he told Officer Williams that there was marijuana in the room, and that his friend, Mr. Thomas, had smoked the marijuana.

3.  The hotel room was registered in Mr Johnson's name.

4.  Mr. Johnson produced "paperwork for a medical marijuana application" and a physician's certificate, but not a medical marijuana registration card itself.

5.  When Mr. Thomas returned to the room, he produced his own medical marijuana card.

6.  The officers, including Sgt. Gulick, entered the room without the occupants' consent and conducted a warrantless search.

7.  Drugs and money were seized, but Mr. Johnson was not arrested at the scene.

While a warrantless search in a home (or in this case, a hotel room where the registered guest has a reasonable expectation of privacy) is presumptively unreasonable, that presumption is overcome, and a warrantless search is permissible, where certain exigent circumstances exist. *Kentucky v. King*, ___U.S.___, 131 S.Ct. 1849, 1858 (2011). "[T]he need 'to prevent the imminent destruction of evidence' has long been recognized

as a sufficient justification for a warrantless search." *Id*., quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Here, the officers knew that there was a controlled substance–marijuana–inside the hotel room, not only because they could smell it, but because Mr. Johnson told them there was. Under these circumstances, the potential for the destruction of the contraband creates an exigency that justifies an immediate, warrantless search and seizure. This case is factually similar to *United States v. McMillion*, 472 Fed.App'x. 138 (3rd Cir. 2012), where the Third Circuit upheld a warrantless search under the exigent circumstances doctrine:

> "Here, the exigency of the circumstances provided the officers with an objectively reasonable belief that a warrantless entry was justified. The officers followed the odor of marijuana to Washington's apartment, nockked on the door and, when Washington opened the door, the odor was even stronger. It was thus reasonable for the officers to suspect that there was ongoing drug activity, and, particularly in light of McMillion's admission to smoking marijuana, it was also reasonable for the officers to conclude that contraband was being destroyed and would continue to be destroyed or removed if they did not act immediately." *Id*. at 140-41.[2]

Under well-established law, then, it would seem that the exigent circumstances doctrine would support the warrantless search. But what about the Michigan Medical Marijuana Act ("MMMA"), M.C.L. § 333.26421 *et seq*? Mr. Johnson argues that under the Act, he and Mr. Thompson had the legal right to be in possession of the marijuana, hence, there was no illegal activity and no contraband that would justify a warrantless entry into their hotel room:

> "Once the Plaintiff any Danyell Thomas produced authorization for them to be in possession of Medical Marijuana, Defendant Gulick's inquiry concerning the smell of marijuana coming from Plaintiff's rental suite should have ended."

---

[2] While Mr. Johnson claims that he told the Officer Williams that he did not smoke any marijuana, he said that Mr. Thompson did. Mr. Thompson returned to the room before the officers entered and conducted their search. Thus, the concern that the evidence might be destroyed was the same as in *McMillion*.

-8-

"Once Defendant Gulick was shown the authorization for the marijuana, his inquiry should have concluded.  There was no legal basis for Defendant Gulick to question Plaintiff, Ms. McElwee and Mr. Thomas any further. Neither were their (sic) exigent circumstances for Defendant Gulick to enter Plaintiff's motel suite uninvited." *Plaintiff's Response* [Doc. #42], pp. 4-5.

Under the facts of this case, nothing in the MMMA impinges on the probable cause determination or the exigent circumstances exception to the warrant requirement. Section 4 of the Act, M.C.L. § 333.26424, states that "[a] qualifying patient *who has been issued and possesses a registry identification card* shall not be subject to arrest, prosecution, or penalty in any manner...for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana...." (Emphasis added).[3] Section 4 does not legalize marijuana; rather, "[i]nstead of describing an affirmative right to grow, possess, or juse marijuana, § 4 simply indicates that registered qualifying patients, primary caregivers, and physicians are protected from arrest, prosecution, or penalty if they meet the specific requirements set forth." *People v. Redden*, 290 Mich.App. 65, 104, 799 N.W.2d 184 (2010).

First, a qualifying patient in possession of a registry identification card and who has under 2.5 grams of marijuana is protected from *arrest*. Mr. Johnson was not arrested at the scene. Section 4 does not address the question of whether the police may conduct a *search* of the individual's premises. Indeed, in *People v. Brown*, 297 Mich.App. 670, 674, 825 N.W.2d 91 (2012), the Michigan Court of Appeals, noting that "the MMMA does not abrogate state criminal prohibitions related to marijuana," held:

---

[3] Sec. 4 also permits the qualifying patient who has not specified a primary caregiver to cultivate up to 12 marijuana plants. That provision is not relevant to the present case.

"Thus, we conclude that to establish probable cause, a search-warrant affidavit need not provide facts from which a magistrate could conclude that a suspect's marijuana-related activities are specifically not legal under the MMMA." *Id.*

*See also United States v. Duval*, 742 F.3d 246, 252 (6th Cir. 2014)(absent "clear and uncontroverted evidence" that a suspect is in full compliance with the MMMA, the failure to include facts pertaining to the MMMA in a search warrant does not invalidate a probable cause finding)(citing *Brown*); *United States v. Ashbourne*, 571 F.App'x. 422, 425 (6th Cir. 2014)(affirming district court's finding "that the police are not required to anticipate or investigate a defendant's possible defenses to apparent illegality," including the claimed protection of the MMMA).

No less than a search based on a warrant, a warrantless search must be based on probable cause. Nothing in the MMMA as interpreted by the Michigan Courts, or in Mr. Johnson's statements to the officers, would have negated probable cause in this case.

More significantly, it is undisputed that Mr. Johnson was not in possession of a registry identification card; therefore, § 4 of the MMMA does not apply to him in any event. Rather, he was in possession of an application and a physician's certification. While this might be relevant to an affirmative defense under § 8 of the Act, M.C.L. § 333.26428, it does not immunize an individual who does not meet the requirements of § 4 from arrest, prosecution, or search. *People v. Redden, supra*, 290 Mich.App. at 117-119.[4]

The warrantless search of Mr. Johnson's hotel room was supported by probable cause and exigent circumstances, specifically the potential destruction of evidence. There was no Fourth Amendment violation. Under the first prong of *Saucier*, Sgt. Gulick is

---

[4] The fact that Mr. Thompson apparently had a valid registration card is irrelevant. He is not a party to this lawsuit, and the room was registered in Mr. Johnson's name. Moreover, Mr. Thompson was not arrested.

-10-

entitled to qualified immunity.

In addition, even if it could be argued that the MMMA works to negate probable cause to search, the right was not clearly established at the time of the search. In a qualified immunity analysis, the right in question cannot be a generalized right. "It must be clearly established in a 'particularized' sense, so that 'the contours of the right' are clear enough for any reasonable official in the defendants' position to know that what the official is doing violates that right." *Danese v. Asman,* 875 F.2d 1239, 1242 (6th Cir. 1989)(citations omitted).  *See also Myers v. Potter*, 422 F.3d 347, 356 (6th Cir.2005) ("[W]e do not assess the right violated at a high level of generality, but instead, we must determine whether the right [is] 'clearly established' in a more particularized ... sense"); *Martin v. Heideman*, 106 F.3d 1308, 1312 (6th Cir.1997) ("Because most legal rights are 'clearly established' at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly' violated").

Of course, in a generalized sense, the Fourth Amendment right to be free from warrantless or unreasonable searches and seizures has been clearly established since 1789.  But viewing this case through a more particularized lens, and under the facts of this case, there is a dearth of clearly established legal authority for the proposition that a suspect's status under the MMMA figures into a police officer's assessment of probable cause to search. Indeed, the cases cited above provide a wealth of authority to the contrary.

Because Sgt. Gulick did not violate any clearly established constitutional right, he should be dismissed on the basis of qualified immunity.

-11-

## IV.   CONCLUSION

I recommend that Sgt. Gulick's Motion to Dismiss Based on the Pleadings Pursuant to Fed.R.Civ.P. 12(c) or, Alternative, Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 [Doc. #36] be GRANTED, and that the complaint be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 23, 2016

-12-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on February 23, 2016, electronically and/or by U.S. mail.

<div style="margin-left: 40%;">

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen

</div>